1  CONTRACTOR TO COLLECT PAYMENT FOR WORK NOT YET COMPLETED, OR FOR

2  MATERIALS NOT YET DELIVERED." Defendant's agreement failed to contain such language.

3    41.    In fact, the Defendant's Agreement is illegally drafted in many respects as it fails to

4  contain many of the language required by Business and Professions Code section 7159, including, but

5  not limited to, a required mechanic's lien warning, a specific description regarding when progress

6  payments would be made along with a clearly identifiable amount and date on which they would be paid,

7  the language referenced above alerting the homeowner that it is against the law for you to accept money

8  for services and work not performed, and much more.

9    42.    Furthermore, without a written change order (in violation of the law, the Defendant made

10 the following changes to the project:

11    A. <u>Cabinet Changes.</u>  When the cabinets arrived, they were not the cabinets that had been

12 approved by the Plaintiffs.  Defendant approved of them unilaterally.  Furthermore, in connection with

13 another section of the cabinetry, Defendant made changes to it that were not identified in the plans, and

14 when Mr. Green complained about it, Defendant stated that the Plaintiffs would have to pay additional

15 money to get him to rectify his error;

16    B. <u>Master Vanities</u>.  Defendant made changes to master vanities without the Plaintiffs' approval.

17    C. <u>Doors</u>.  Defendant decided to install the wrong doors in the master bedroom.

18    D. <u>Finishing items on the Doors</u>.  The Plaintiffs told Defendant specifically not to put the

19 finishing items on the doors because they still had to be painted.  Instead of adhering to their concern,

20 Defendant unilaterally had the items affixed to the doors, which has caused problems in connection with

21 the painting.

22    E. <u>Carpet</u>.  For good cause, the Plaintiffs asked Defendant not to install the carpet until further

23 work had been performed because they did not want to have the carpet damaged prior to the completion

24 of the project.  Instead of listening to their concerns, Defendant once again, unilaterally had the carpets

25 installed and subsequently the carpet sustained substantial damage.

26

                                    -12-

27

F. <u>Other items</u>. Defendant had continuously ignored the Plaintiffs wishes and disregarded their concerns in every respect. For example, Defendant made unilateral decisions without their input in connection with the flooring under the island, the master closet doors, the trim, etc.

G. <u>Improper Measurement of Doors</u>. Defendant improperly measured the laundry room cabinet doors, and when there was not enough clearance space for them to open, Defendant charged the Greens extra money without a change order.

H. <u>Wrong Windows</u>. Defendant ordered the wrong windows for the upstairs bathroom and put in crank windows (and charged the Greens extra money without a change order) even though they told Defendant explicitly not to order crank windows.

I. <u>Lighting</u>. Defendant made a unilateral decision to upgrade the lighting in the Plaintiffs' kitchen (without a change order). Defendant subsequently tried to charge the Plaintiffs $2200 extra for his decision. When they told Defendant that they were not going to pay, Defendant told them that he would withdraw their request for extra money and take care of it. However, the subcontractor that installed the lights is indicating now that Defendant failed to pay him approximately $1200 to complete the work.

**Over Billing**

43.     Until the Defendant provides the Plaintiffs with copies of invoices and other documents corroborating the expenditures that he has made on the home, the Plaintiffs won't know the full extent of the Defendant's fraud and the amount of money that they have paid over and above the amount that the Defendant was legally required to invoice. However, based on the information that the Plaintiffs have gathered to date, they are able to see that the Defendant had illegally billed them for: i) items that were paid for by the Plaintiffs, but were never completed by the Defendant, ii) mistakes that the Defendant made and had to correct and iii) changes that were made that increased the Agreement price that were done absent a legal change order or the Plaintiffs' legal consent. Some of these items are as follows:

-13-

Case: 11-05211     Doc# 1-1     Filed: 07/15/11     Entered: 07/15/11 12:12:05     Page 2 of
29

**Items paid for but were never completed
supplied**

| | TOTAL |
|---|---|
| Master sconces | 577.62 |
| Nook and Dining lights | 625.29 |
| 2F Bath Lights | 363.4 |
| Carpet pad for master bed and closet (closet carpet damaged needs replacement- agreed by contractor in writing) | 5215.16 |
| Interior painting | 4500 |
| Closet stain | 4025 |
| Stairs | 3000 |
| Iron for stair | 3000 |
| LED lights in kitchen (see point 12) (credited 2000) but 1200 materials not delivered to site) | 2200 |

**TOTAL Paid, but not complete** | $23,506.47

**Items Charged for Contractor's Mistake**

| | |
|---|---|
| Window order wrong color | 171.76 |
| Cost to correct Laundry framing | 900 |
| Total overpay due to contractor mistakes | $1,071.76 |

**Change Orders - charged 20% mark up over charge** | TOTAL Billed

–14–

|  |  |
|---|---|
| | <u>at 20%(S)</u> |
| Put attic space up without consulting move required | |
| sprinklers moving | 641.34 |
| 2 low voltage lights- Plaintiffs requested no change | |
| order signed | 1848 |
| HDMI Cabling | 792 |
| Add 2 circuits refrig/washer | 240 |
| Upgraded tankless water heater (haven't paid yet as it is | |
| damaged) | $1,320 |
| | |
| Added washing machine lines | 1992 |
| Added dining room cabinets | 1140 |
| Closet granite fabrication (later credited 1/2 granite | |
| (734.93) and fabrication (825) to compensate for closet | |
| issues) but still over charged on remaining charges at | |
| 20%. Base fabrication charge 1650. | 1980 |
| Cabinet 1F bath | 1140 |
| Bathroom 1F changes | 4500 |
| Added Fan Bath 1F | 432 |
| Electrical | 1860 |
| Tub and valves | 1097 |
| Valves and faucets | 649.09 |
| <u>TOTAL Over pay due to "CHANGE ORDER" charges</u> | <u>$19,631.43</u> |

Case: 11-05211    Doc# 1-1    Filed: 07/15/11    Entered: 07/15/11 12:12:05    Page 4 of
29

In total, the Defendants have overcharged the Plaintiffs at least $44,209.66 based on the items specified in this paragraph 39.

**Refusal to Supply Properly Skilled Workers**

**44.** Because of Defendant's failure to pay the subcontractors money and his embezzlement of (and squandering of) the Plaintiffs' money for his personal use, Defendant was unable to pay his subcontractors and they all were hesitant to return to the job. Furthermore, it was brought to the Plaintiffs' attention that Defendant had been using illegal, unlicensed and incompetent workers to perform work on their project. In fact, some of said workers acknowledged to the Plaintiffs that they were not licensed. Furthermore, the unlicensed and incompetent workers who were there to follow Defendant's directions were required legally to be Defendant's employees and be covered by workers compensation insurance, but were not treated as Defendant's employees. Therefore, the Defendant's failures exposed the Plaintiffs to potential liability.

45. **Extended damages**

As a result of the Defendants' conduct, the Plaintiffs have not only suffered out of pocket damages as a result of having to hire other contractors, etc., but they have also had to pay extended interests rates as a result of having to take money from their line of credit to pay others to rectify the Defendants' conduct and to pay other bills incurred as a result of the Defendants' conduct.

## FIRST CAUSE OF ACTION

### (FRAUD)/INTENTIONAL DECEIT/CONCEALMENT/FALSE PROMISE

### (Against all Defendants)

46. Plaintiffs adopt and restate paragraphs 1 through 45, as though fully set forth herein.

47. Plaintiffs are informed and believe and on that basis allege that when Defendants made the statements alleged above, they had no intention of performing them and/or knew that they were false. Furthermore, the statements were made and the conduct mentioned above was engaged in, among other things, to induce the Plaintiffs to give the Defendant money.

-16-

1    48.    Furthermore, Plaintiffs are informed and believe and on that basis allege, that at the time

2    Defendants made the statements as alleged above (and engaged in the conduct mentioned above), they

3    knew those statements to be false and made them with the intention to deceive and defraud Plaintiffs and

4    to induce Plaintiffs to act in reliance on those representations in the manner set forth herein, or with the

5    expectation that Plaintiffs would so act.

6    49.    Plaintiffs, at the time these representations were made by Defendants, and at the time

7    Plaintiffs took the actions herein alleged, were ignorant of the falsity of Defendants' representations and

8    believed them to be true.

9    50.    In reliance on these representations, Plaintiffs were induced to continue to allow the

10    Defendants to represent their interests in connection with the Purchase Agreement.    Plaintiffs also

11    incurred expenses, lost money, investment opportunities and incurred (and will incur) unnecessary fees

12    based upon the assumption that Defendant's representations were true. The Plaintiffs also suffered

13    emotional distress damages. Had Plaintiffs known the actual facts, they would not have taken such

14    action.

15    51.    Plaintiffs reliance on Defendants' representations was justified because Defendants

16    represented that his representations were true and because Defendants had a fiduciary duty to Plaintiffs.

17    It is customary and reasonable for persons such as Plaintiffs to rely upon the representations of a person

18    in Defendants' position who has made such promises and representations.

19    52.    As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs

20    were induced to pay the Defendants money and allow them to continue to perform services.    Plaintiffs

21    also incurred expenses, lost money, investment opportunities and incurred (and will incur) unnecessary

22    fees based upon the assumption that Defendant's representations were true. Plaintiffs also suffered

23    emotional distress damages.  Had Plaintiffs known the actual facts, he would not have taken such action.

24    Plaintiff therefore is owed damages, the full extent to which Plaintiff is currently unaware. Therefore,

25    Plaintiff requests leave to amend when said amount is ascertained.

26

-17-

27

53.     As a further proximate result of Defendants' conduct as alleged in this complaint, Plaintiffs suffered extreme mental anguish and emotional and physical distress, shame, mortification, and hurt feelings.  Plaintiffs are informed and believe and on that basis allege that the exact amount of said damage inflicted is not fully known to Plaintiffs. Plaintiffs request leave to amend when said amount is ascertained.

54.     The aforementioned conduct of Defendants was intentional misrepresentation, deceit, or concealment on the part of Defendant of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for the relief hereinafter set forth.

## SECOND CAUSE OF ACTION

### (CONSTRUCTIVE FRAUD)

### (Against all Defendants)

54.     Plaintiffs adopt and restate paragraphs 1 through 53, as though fully set forth herein.

55.     When Defendants made the promises and representations alleged herein, they had no reasonable grounds for believing them to be true.  Furthermore, they knew they were false.

56.     Moreover, Defendants made said promises and representations with the intention of inducing Plaintiffs to act in reliance on these representations in the manner hereinafter alleged, or with the expectation that Plaintiffs would so act.

-18-

57.     Plaintiffs, at the time these representations were made by Defendants and at the time Plaintiffs took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

58.     The aforementioned conduct of Defendants were intentional misrepresentation, deceit, or concealment on the part of Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Plaintiffs pray for the relief hereinafter set forth.

## THIRD CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY OF CARE)

#### (Against all Defendants)

59.     Plaintiffs adopt and restate paragraphs 1 through 58, as though fully set forth herein.

60.     California law imposes on the general contractors, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary. Among other things, general contractors have a duty to make to the principal *the fullest disclosure of all material facts concerning the transaction* that might affect the principal's decision. At all relevant times, the following statutes, among others, have been violated by the Defendants, and were in effect within the State of

California, applied to Defendants and prescribed some of Defendants' duties to the Plaintiff in California (hereinafter referred to as the *"Statutes"*):

     a. California civil Code Sections 896(3)(18)(b)(1), (18)(b)(2);   (18)(b)(3); (18)(b)(15);

     b. California civil Code Sections 900 et seq.

     c. Business & Professions Code Sections 7031(b); 7059; 7159; 7159(c), 7159.6, 7159(c)(8), 7159(c)(9)(c), 7159(c)(5); 7159(d)(4); 7159.5; 7160; 7161; 7163 (a);

     d. California Code of Civil Procedure Sections 1029.8; 1029.8(a)

61.     By engaging in the conduct mentioned herein, Defendants breached their duty of care, duty to disclose and duty to be honest and truthful.

62.     As a direct result of Defendants' conduct, and the breach of their duty of care to Plaintiffs, Plaintiffs are informed and believe and on such basis allege that they have suffered damages in that they have incurred unnecessary expenses and have lost money and profits (and will continue to lose money and profits, the full extent to which is not currently known. Plaintiffs request leave to amend when said amount is ascertained.

63.     As a further proximate result of the conduct of Defendants as herein alleged, Plaintiffs suffered extreme mental anguish and emotional and physical distress, shame, mortification, and hurt feelings. Plaintiffs are informed and believe and on that basis allege that the exact amount of said damage inflicted is not fully known to Plaintiffs. Therefore, Plaintiffs request leave to amend when said amount is ascertained.

WHEREFORE, Plaintiffs pray for the relief hereinafter set forth.

-20-

Case: 11-05211    Doc# 1-1    Filed: 07/15/11    Entered: 07/15/11 12:12:05    Page 9 of 29

## FOURTH CAUSE OF ACTION
### (BREACH OF CONTRACT)

64.     Plaintiffs adopt and restate paragraphs 1 through 63, as though fully set forth herein.

65.     Plaintiffs have performed all conditions, covenants and promises required on their part to be performed in accordance with the terms and conditions of their agreement with Defendant as described above.

66.     Plaintiffs had requested Defendants to perform their obligations under their written contract.

67.     Defendants' breached the contract by engaging in the conduct herein alleged.

68.     By engaging in the conduct outlined above and in breaching his contracts with Plaintiffs, Defendants also breached the implied covenant of good faith and fair dealing with Plaintiffs.

69.     As a direct result of Defendant's conduct, Plaintiffs are informed and believe and on such basis allege that they have incurred unnecessary expenses, are owed money from Defendants and have lost profits, the full extent to which is not currently known (but at least the amount of $200,000). Plaintiffs' requests leave to amend when said amount is ascertained.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.


## FIFTH CAUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

70.     Plaintiffs hereby incorporate by reference paragraphs 1 through 69, inclusive.

-21-

71. Furthermore, Defendants knew that their conduct as described herein would cause extreme harm to Plaintiffs. Defendants also knew that their failure to adhere to said promises and fiduciary duties would cause Plaintiffs extreme emotional distress. Despite knowing the above mentioned facts which put Defendants on notice that it was extremely important to Plaintiffs that Defendants perform the Services in a workmanlike and expeditious manner (and not steel his money), Defendants engaged in the conduct mentioned herein.

72. Defendants' conduct as described above was knowing, intentional and willful and done with a reckless disregard of the probability of causing Plaintiffs extreme emotional distress and other harm.

73. As a proximate result of Defendants' conduct as alleged in this complaint, Plaintiffs have suffered extreme mental anguish and emotional and physical distress, as well as all the other harm alleged in the paragraphs above. Plaintiffs are informed and believe and on that basis allege that the exact amount of said damage inflicted is not fully known to Plaintiffs (but at least the amount of $200,000). Plaintiffs' requests leave to amend when said amount is ascertained.

74. In doing the acts alleged above, Defendants' conduct was both oppressive and malicious in that it was carried on by Defendants in a willful and conscious disregard of Plaintiffs' rights and subjected Plaintiffs to cruel and unjust hardship. Plaintiffs' are therefore entitled to recover punitive damages.

WHEREFORE, Plaintiffs prays for relief against Defendants, as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (NEGLIGENCE PER SE)

75. Plaintiffs adopt and restate paragraphs 1 through 74, as though fully set forth herein.

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES
1-10-CV-176786

Case: 11-05211    Doc# 1-1    Filed: 07/15/11    Entered: 07/15/11 12:12:05    Page 11 of
29

76. At all relevant times, the following statutes, among others, have been violated by the Defendant, and were in effect within the State of California, applied to Defendant and prescribed some of Defendant's duties to the Plaintiffs in California (hereinafter referred to as the *"Statutes"*):

    a. California civil Code Sections 896(3)(18)(b)(1), (18)(b)(2);   (18)(b)(3); (18)(b)(15);

    b. California civil Code Sections 900 et seq.

    c. Business & Professions Code Sections 7031(b); 7059; 7159; 7159(c), 7159.6, 7159(c)(8), 7159(c)(9)(c), 7159(c)(5); 7159(d)(4); 7159.5; 7160; 7161; 7163 (a);

    d. California Code of Civil Procedure Sections 1029.8; 1029.8(a)

77. Defendants owed a duty of care to Plaintiffs to act in compliance with the Statutes.

78. At all relevant times, Plaintiffs were one of the class of persons for whose protection the Statutes were adopted, and the injuries sustained by Plaintiffs were some of the consequences which the California State Legislature sought to prevent in its enactment of said statutes.

79. Defendants failed to obey the Statutes. Defendants are therefore presumptively negligent. Defendants breached their duty to Plaintiffs by the acts or omissions alleged above.

80. As a proximate result of acts of Defendants' negligence, carelessness, recklessness, and unlawfulness as previously alleged, Plaintiffs were injured in their health, strength, and activity. Furthermore, Plaintiffs have suffered mental, physical and nervous pain and suffering.

81. As a proximate result of acts of Defendants' negligence, Plaintiffs have lost profits and money (and will continue to lose profits), all in amounts presently unknown to them (but at least the amount of $200,000). Plaintiffs ask leave of court to prove that amount at the time of trial.

82. The wrongful conduct of Defendants was done maliciously, oppressively, with a conscious disregard of the rights and safety of Plaintiffs and others, and/or with intent to harm, and therefore Plaintiffs are entitled to punitive and exemplary damages in an amount to be ascertained according to proof.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

-23-

## SEVENTH CAUSE OF ACTION
### (NEGLIGENCE)

83. Plaintiffs incorporates herein by reference Paragraphs 1 through 82, above, as if set forth fully herein.

84. Defendants, and each of them, owed a duty to Plaintiffs to exercise reasonable care in performing their respective functions, duties and responsibilities in the respective capacities described above, and knew or should have known with reasonable certainty that the Plaintiffs would suffer damages if they failed to perform their duties in a good and workmanlike manner.

83. Defendants breached their respective duties by failing and neglecting to perform their functions, duties, and responsibilities in their capacities in a reasonably workmanlike manner and within the prevailing standard of care, resulting in damage to the Plaintiffs. Defendants' breach of duties and resultant damages were not apparent by reasonable inspection of the Property at the conclusion of Defendants' work.

84. Within days after the defendants walked of the job, the Plaintiffs began to discover the defective workmanship of Defendants, as alleged above.

85. As a direct and legal result of Defendant's negligence, Plaintiffs has, and will incur, damages as described above.

WHEREFORE, Plaintiffs prays for judgment as hereafter set forth.

## EIGHTH CAUSE OF ACTION
### (BREACH OF WARRANTY)

-24-

86.     Plaintiffs incorporates herein by reference Paragraphs 1 through 85, above, as if set forth fully herein.

87.     At all times herein mentioned, Defendants above-named, were and are obligated to Plaintiffs under an implied warranty that all of the work relating to the Property would be performed in a good and workmanlike manner, that it would be free from defects, consistent with applicable codes and regulations, and constructed in compliance with all plans and specifications. Defendant also was required to give an express warrantee pursuant to Civil Code Section 900.

88.     Defendants knew or had reason to know that Plaintiffs would rely upon the skill and judgment of Defendants in the performance of the work.

89.     Defendants impliedly warranted that the Services would be performed in a good and workmanlike manner.

90.     Defendants breached said implied warranty, inasmuch as their work was defective, and was not performed in a good and workmanlike manner or in compliance with all codes, regulations, plans and specifications.

91.     As a direct and legal result of Defendant's breach of implied warranty, Plaintiffs have, and will incur, damages as described above.

WHEREFORE, Plaintiffs pray for judgment as hereafter set forth.

## NINTH CAUSE OF ACTION

-25-

### (BREACH OF EXPRESS WARRANTY)

92.     Plaintiffs incorporates herein by reference Paragraphs 1 through 91, above, as if set forth fully herein.

93.     At all times herein mentioned, Defendants above-named were and are obligated to Plaintiffs under an express warranty pursuant to the parties' contract that all of the work relating to the Property would be performed in a good and workmanlike manner, that it would be free from defects, consistent with applicable codes and regulations, and constructed in compliance with all plans and specifications.

94.     Defendants knew or had reason to know that Plaintiffs would rely upon the skill and judgment of Defendants in the performance of the work.

95.     Defendants warranted that the Services would be performed in a good and workmanlike manner and that he would use his best efforts.

96.     Defendants breached said express warranty, inasmuch as his work was defective, he did not use his best efforts, and the work was not performed in a good and workmanlike manner or in compliance with all codes, regulations, plans and specifications.

97.     As a direct and legal result of Defendants' breach of the express warranty, Plaintiffs have, and will incur, damages as described above.

WHEREFORE, Plaintiffs prays for judgment as hereafter set forth.

-26-

## TENTH CAUSE OF ACTION
## (UNJUST ENRICHMENT-ASSUMPSIT)

98.     Plaintiffs adopt and restate paragraphs 1 through 97, as though fully set forth herein.

99.     Defendants became indebted to Plaintiffs in an amount according to proof for money that Defendants received (at least in the amount of $200,000, which belonged to Plaintiffs and for the other gains that the Defendants made at the Plaintiffs' expense (and to the Plaintiffs' detriment).

100.    Defendants have been unjustly enriched as a result of his conduct described herein.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
## (CONVERSION OF PROPERTY)

101.    Plaintiffs adopt and restate paragraphs 1 through 100, as though fully set forth herein.

102.    Plaintiffs are informed and believe that between Sept 2009 and the present date, the amount of funds that Defendants fraudulently took from the Plaintiffs was $200,000 plus the additional interest and penalties that the Plaintiffs were required to pay as a result of having paid the funds from a line of credit on his home.

103.    As a proximate result of Defendants' act of fraud and theft, Plaintiffs has have lost money in the amount of at least $200,000 plus the amount of high interest and interest payments that Plaintiffs have been paying as a result of the horrible conduct.

104.    Between the time of Defendants' conversion of the money taken for his own use and the filing of this action, Plaintiffs have had to procure the services of an attorney and other professionals, all to Plaintiffs' further damage. Also, as a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs has been further damaged according to proof.

–27–

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

## TWELFTH CAUSE OF ACTION

### (NEGLIGENT MISREPRESENTATION)

105.    Plaintiffs adopt and restate paragraphs 1 through 104, as though fully set forth herein.

106.    When Defendants made the representations indicated above, Defendants had no reasonable grounds for believing them to be true.

107.    As a proximate result of Defendants' conduct as alleged in this complaint, Plaintiffs has have suffered mental anguish and emotional and physical distress, as well as all the other harm alleged in the paragraphs above. Plaintiffs are informed and believe and on that basis allege that the exact amount of said damage inflicted is not fully known to Plaintiffs (but at least the amount of $200,000). Plaintiffs' requests leave to amend when said amount is ascertained.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION

### (MONEY HAD AND RECEIVED)

108.    Plaintiffs adopt and restate paragraphs 1 through 107, as though fully set forth herein.

109.    Defendants became indebted to Plaintiffs within the last year for money had and received by Defendants for the use and benefit of Plaintiffs.  Plaintiffs are informed and believe that the Defendants have received at least $200,000.

110.    Plaintiffs are unaware of the full extent of the amount of money that Defendants received for the benefit of Plaintiffs. Plaintiffs ask leave to amend when said amount is ascertained.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

-28-

## FOURTEENTH CAUSE OF ACTION

### (IMPOSITION OF CONSTRUCTIVE TRUST)

111.    Plaintiffs adopt and restate paragraphs 1 through 110, as though fully set forth herein.

112.    By virtue of his fraudulent acts as indicated above, Defendants hold money wrongfully taken from Plaintiffs as a constructive trustee for Plaintiffs' benefit.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

### FIFTEENTH CAUSE OF ACTION

### (FRAUD PURSUANT TO BUS. & PROF CODE 7160)

113.    Plaintiffs hereby incorporate by reference paragraphs 1 through 112, inclusive, of this Complaint, as if fully set forth herein.

114.    The contract between the Plaintiffs and the Defendants was a work of improvement.

115.    The Defendants made fraudulent representations to the Plaintiffs which caused them to rely on said representations, which led to his decision to employ the Defendant.

116.    As a result of the Defendants' fraud the Plaintiffs has suffered the damages identified above.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

–29–

## SIXTEENTH CAUSE OF ACTION
## LIABILITY PURSUANT TO BOND
### (Against Old Republic Surety Company and Does 11-15)

117.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 116, inclusive, and the allegations in all of the other claims alleged in this cross-complaint, as if fully set forth herein verbatim.

118.    Plaintiffs are informed and believe and based thereon allege that Defendant Old Republic Surety Company and DOES 11-15 are a bonding company licensed to do business in the State of California, and engaged in the business of issuing bonds to contractor's such as Defendants.  Plaintiffs are informed and believe that the Defendants provided errors and omission insurance (pursuant to a bond) to some of the Defendants.  Plaintiffs also are informed and believe and on said basis allege that Defendant Old Republic Surety Company made Defendants the principal on a bond in the amount of over $12,500.  For the avoidance of doubt, Old Republic Surety is only being sued on the bond pursuant to this cause of action and no other causes of action herein.

119.    Defendants committed fraud and all of the other acts as alleged above.

120.    As a proximate result of Defendants' conduct, the Plaintiffs has been damaged in the reasonable sum, according to proof, but exceeding the minimum jurisdiction of this court.  Defendants are liable to the Plaintiffs on the bond to pay these damages, as well as any and all other damages or losses sustained by the Plaintiffs by reason of the Defendant's fraud.

WHEREFORE, Plaintiffs prays for the relief hereinafter set forth.

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES
1-10-CV-176786

## SEVENTEENTH CAUSE OF ACTION
### (EXPRESS INDEMNITY)

121.     Plaintiffs incorporate herein by reference Paragraphs 1 through 120, above, as if set forth fully herein.

122.     As a term and condition of the parties' contract, the Defendants agreed to indemnify and hold Plaintiffs harmless from "any and all claims, costs, expenses, damages and liabilities arising out of, directly or indirectly, the acts and/or omissions of Subcontractor, its partners, employees, and/or agents."

123.     Thereafter, as indicated above, as a result of the Defendants' conduct, the Plaintiffs has been forced (and will be forced) to pay other contractors money.

124.     Plaintiffs have performed all the conditions and obligations to be performed on his part under his agreement with Defendant.

125.     By reason of the foregoing, Plaintiffs are entitled to be indemnified by Defendant in the sum of at least $200,000.00, but Defendants have not paid any part of this sum to Plaintiffs.

126.     Plaintiffs have incurred, and continue to incur, necessary and reasonable attorney's fees and other legal costs in prosecuting this action against Defendants.  By the terms of the agreement between Plaintiffs and defendant, Plaintiffs are entitled to recover these fees and costs from Defendants. Plaintiffs do not know the full amount thereof at this time and will move to amend this complaint to state the amount when it becomes known to him or on proof thereof.

## PRAYER

WHEREFORE, Plaintiffs prays judgment against Defendants and each of them, as follows:

On the FIRST COUNT:

1.    General damages according to proof (but at least in the amount of $200,000.00);

2.    Special damages according to proof;

3.    For punitive damages in an amount appropriate to punish Defendants and deter others

       from   engaging in similar misconduct; and

4.    For interest as allowed by law

On the SECOND COUNT:

5.    General damages according to proof (but at least in the amount of $200,000.00);

6.    For special damages according to proof;

7.    For punitive damages in an amount appropriate to punish Defendants and deter others

       from engaging in similar misconduct; and

8.    For interest as allowed by law

On the THIRD COUNT:

9.    For general damages according to proof (but at least in the amount of $200,000.00);

10.   For special damages according to proof;

11.   For punitive damages in an amount appropriate to punish Defendants and deter others

       from engaging in similar misconduct;

On the FOURTH COUNT:

7.    For general damages according to proof (but at least in the amount of $200,000.00);

8.    For interest as allowed by law

On the FIFTH COUNT:

-32-

9.   For general damages according to proof (but at least in the amount of $200,000.00);

10.  For special damages according to proof;

11.  For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

On the SIXTH COUNT:

12.  For general damages according to proof (but at least in the amount of $200,000.00);

13.  For special damages according to proof;

On the SEVENTH COUNT:

14.  General damages according to proof (but at least in the amount of $200,000.00);

15.   For special damages according to proof;

On the EIGHTH COUNT:

16.  General damages according to proof (but at least in the amount of $200,000.00);

17.  For special damages according to proof;

18.  For interest as allowed by law

On the NINTH COUNT:

19.  General damages according to proof (but at least in the amount of $200,000.00);

20.  For special damages according to proof;

On the TENTH COUNT:

21.  For general damages and the amount necessary to prevent the unjust enrichment of Defendant in a sum according to proof (but at least in the amount of $200,000.00);

22.  For interest as allowed by law;

-33-

On the ELEVENTH COUNT:

23. For the value of the property converted;

24. For interest at the legal rate on an amount according to proof pursuant to Section 3336 of the Civil Code;

25. For damages for the proximate and foreseeable loss resulting from Defendant's conversion in an amount according to proof;

26. For interest at the legal rate in an amount according to proof pursuant to section 3287(A) of the Civil Code;

27. For damages for time and money properly expended in pursuit of the converted property

On the TWELFTH COUNT:

28. General damages according to proof (but at least in the amount of $200,000.00);

29. For special damages according to proof;

On the THIRTEENTH COUNT:

30. General damages according to proof (but at least in the amount of $200,000.00);

31. For special damages according to proof;

32. For interest as allowed by law

On the FOURTEENTH COUNT:

33. For an order declaring that Defendant holds the money taken as trustee of a resulting trust for the benefit of Plaintiffs, and that Defendant has no right to title or interest in said money;

-34-

PLAINTIFF JEFF GREEN AND PAMELA MILLS-GREEN'S FIRST AMENDED COMPLAINT FOR DAMAGES
1-10-CV-176786

34. For an order declaring that if Plaintiffs' interest in the above-described funds taken by Defendant is disposed of before this judgment becomes final, Cross-Complainant is the owner of the equivalent of said funds held by Defendant;

35. For an order mandating that Defendant convey to Cross-Complainant forthwith all money owed to Plaintiffs by Defendant;

36. For damages in the amount of all monies found owing to Plaintiffs.

On the FIFTHTEENTH COUNT:

37. General damages according to proof (but at least in the amount of $200,000.00);

38. Special damages according to proof;

39. For punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

On the SIXTEENTH COUNT:

43. The full amount of the bonds issued by Old Republic and DOES 11-15;

On the SEVENTEENTH COUNT:

44. General damages in the amount of at least $200,000.00;

45. For special damages according to proof;

On ALL COUNTS:

46. For the cost of suit incurred herein, including attorneys fees pursuant to Business and Professions Code Section 7160 and Code of Civil Procedure Section 1029.8(a) and other codes;

47. For treble damages pursuant to Code of Civil Procedure Section 1029.8; and

–35–

48.    For such other and further relief as the Court may deem proper.

Dated: 7/9/10



WADE & SILVERSTEIN

By

AMIEL L. WADE

Attorneys for Plaintiffs
PLAINTIFF JEFF GREEN AND PAMELA
MILLS-GREEN'S

-36-

Case: 11-05211    Doc# 1-1    Filed: 07/15/11    Entered: 07/15/11 12:12:05    Page 25 of
29

# EXHIBIT A



# CONTRACTOR AGREEMENT

**OWNER'S NAME:** Jeff and Pamela Green
**ADDRESS:**     1381 Arleen Ave
                     Sunnyvale, CA 94087

**CONTRACTOR:**  Hale Creek Construction, Inc.
**ADDRESS:**    120 N Murphy Ave
               Sunnyvale, CA 94086
**CA License #:**  905738

### A. PARTIES

This contract (hereinafter referred to as "Agreement") is made and entered into on this _____ day of _____, 20____ by and between <u>Jeffery and Pamela Green</u> (hereinafter referred to as "Owner"); and Hale Creek Construction, Inc. (hereinafter referred to as "Contractor"). In consideration of the mutual promises contained herein, Contractor agrees to perform the following work, subject to the terms and conditions below:

### B. GENERAL SCOPE OF WORK DESCRIPTION

The Contractor shall furnish all of the materials and/or perform all of the work identified in the authorized Proposal(s): <u>#2010-48</u>, annexed hereto (hereinafter referred to as "Proposal").

    a. **LUMP SUM PRICE FOR ALL WORK ABOVE\*:**  **$17,240.00**
       (Seventeen Thousand Two Hundred Forty Dollars and Zero Cents)

       \* This Agreement will expire 7 days after the date at the top of page one of this Agreement if not accepted in writing by Owner and returned to Contractor within that time.

### C. GENERAL CONDITIONS FOR THE AGREEMENT ABOVE

    a. **DATE OF WORK COMMENCEMENT AND SUBSTANTIAL COMPLETION:** Commence work on or about June 14, 2010 Construction time through substantial completion: Six Weeks (July 26, 2010), not including delays and adjustments for delays caused by: holidays; inclement weather; accidents; shortage of labor or materials; additional time required for Change Order and additional work; delays caused by Owner, Owner's design professionals, agents, and separate contractors; and other delays unavoidable or beyond the control of the Contractor.

    b. **SITE PREPARATION:** Owner assumes sole responsibility for the compliance with set back and property use restrictions and location of the structures on the premises and shall indemnify and hold Contractor harmless for any and all damages and attorney fees arising therefrom. All site preparation is to be handled by Owner unless stated otherwise in the Proposal.

    c. **INSURANCE:**
        i. Contractor shall obtain general liability insurance during the progress of the construction and shall also maintain insurance required under the Workmen's Compensation and other laws of the State of California.
       ii. Contractor shall not be responsible for any loss due to fire, vandalism, weather or theft of any materials once delivered to the job site. Owner shall assume all responsibility for any such loss and Owner shall maintain insurance coverage to protect against the same. Owner waives any rights or claims Owner may have against Contractor for any personal injuries and/or property damages incurred by anyone on the property during the period of construction, and shall indemnify, defend and hold Contractor harmless from any claims asserted for such alleged injuries and/or damages.

    d. **PERMITS:** Contractor shall procure any and all necessary permits and, in the performance of construction, shall conform to all laws and ordinances which may be applicable thereto.



Should the cost of any permit(s) increase over and above the price established at the time of the execution of this Agreement, Owner shall pay the increased cost of obtaining such permit(s).

e. **LICENSED CONTRACTOR REQUIRED NOTIFICATIONS:**
STATE LAW REQUIRES ANYONE WHO CONTRACTS TO DO CONSTRUCTION WORK TO BE LICENSED BY THE CONTRACTORS STATE LICENSE BOARD IN THE LICENSE CATEGORY IN WHICH THE CONTRACTOR IS GOING TO BE WORKING-IF THE TOTAL PRICE OF THE JOB IS $500 OR MORE (INCLUDING LABOR AND MATERIALS).

LICENSED CONTRACTORS ARE REGULATED BY LAWS DESIGNED TO PROTECT THE PUBLIC. IF YOU CONTRACT WITH SOMEONE WHO DOES NOT HAVE A LICENSE, THE CONTRACTORS STATE LICENSE BOARD MAY BE UNABLE TO ASSIST YOU WITH A COMPLAINT. YOUR ONLY REMEDY AGAINST AN UNLICENSED CONTRACTOR MAY BE IN CIVIL COURT, AND YOU MAY BE LIABLE FOR DAMAGES ARISING OUT OF ANY INJURIES TO THE CONTRACTOR OR HIS OR HER EMPLOYEES.

YOU MAY CONTACT THE CONTRACTORS STATE LICENSE BOARD TO FIND OUT IF THIS CONTRACTOR HAS A VALID LICENSE. THE BOARD HAS COMPLETE INFORMATION ON THE HISTORY OF LICENSED CONTRACTORS, INCLUDING ANY POSSIBLE SUSPENSIONS, REVOCATIONS, JUDGMENTS, AND CITATIONS. THE BOARD HAS OFFICES THROUGHOUT CALIFORNIA. PLEASE CHECK THE GOVERNMENT PAGES OF THE WHITE PAGES FOR THE OFFICE NEAREST YOU OR CALL 1-800-321-CSLB FOR MORE INFORMATION.

f. **CONTRACTOR NOT TO BE RELIED UPON AS ARCHITECT, ENGINEER, OR DESIGNER:** The Contractor is not an architect, engineer, or designer. Contractor is not being hired to perform any of these services. To the extent that Contractor makes any suggestions in these areas, the Owner acknowledges and agrees that Contractor's suggestions are merely options that the Owner may want to review with the appropriate design professional for consideration. Contractor's suggestions are not a substitute for professional engineering, architectural, or design services, and are not to be relied on as such by Owner. The Contractor is not responsible for ascertaining whether details in Owner's plans conform to all applicable building and planning codes. The Contractor is not responsible for the cost of correcting errors and omissions by the Owner's design professionals and separate contractors.

g. **CHARGES FOR ADDITIONAL WORK: CONCEALED CONDITIONS, DEVIATION FROM SCOPE OF WORK, AND CHANGES IN THE WORK**

   i. **CONCEALED CONDITIONS:** This Agreement is based solely on the observations Contractor was able to make with the project in its condition at the time the work of this Agreement was bid. If additional concealed conditions are discovered once work has commenced or after this Agreement is executed which were not visible at the time this Agreement was bid, Contractor will point out these concealed conditions to Owner, and these concealed conditions will be treated as Additional Work under this Agreement. Contractor and Owner may execute a Change Order for this Additional Work. Contractor is released, held harmless, and indemnified by Owner from all pre-existing mold, fungus, mildew, and organic pathogen problems and is not responsible for costs or damages associated with correcting, containing, testing, or remediating the same.

   ii. **DEVIATION FROM SCOPE OF WORK:** Any alteration or deviation from the Scope of Work referred to in this Agreement involving extra costs of materials or labor

Case: 11-05211   Doc# 1-1   Filed: 07/15/11   Entered: 07/15/11 12:12:05   Page 2 of 13
29
Page 2 of 13



(including any overage on ALLOWANCE work and any changes in the Scope of Work required by Owner, Owner's design professional, Owner's agent, or governmental plan checkers or field building inspectors) will be treated as Additional Work under this Agreement resulting in an additional charge to Owner as set forth herein. Contractor and Owner may execute a Change Order for this Additional Work.

Contractor to supervise, coordinate, and charge 20% profit and overhead on the following: all Additional Work under this Agreement, Additional Work caused by concealed conditions, all overages on ALLOWANCE work, all Owner-furnished materials, and all work of Owner's separate contractors who are working on site at same time as Contractor (any time in between when Contractor has commenced work and when the work is 100% complete by Contractor). The amount of the Additional Work will be reasonably determined by the Contractor, and will be subject to Contractor's profit and overhead as noted above.

iii. Exceptions to the Contractor charging profit and overhead on Owner-supplied materials and Owner's separate contractors are strictly limited to the following:

<u>All work and materials which has been paid for as of the date of this agreement.</u>

iv. Contractor's profit and overhead, and any supervisory labor will not be credited back to Owner with any deductive Change Orders (work deleted from Agreement by Owner).

v. LABOR RATES CHARGED FOR TIME-AND-MATERIALS WORK:
Bryan Temmermand..................................................$95/hour
Supervisor/Project Manager .....................................$95/hour
Foreman/Journeyman/Lead ......................................$85/hour
Carpenter Level II .....................................................$75/hour
Carpenter Level I ......................................................$65/hour
Carpenter's Assistant II/Laborer II ...........................$60/hour
Carpenter's Assistant I/Laborer I ..............................$55/hour

Contractor will charge for profit and overhead at the rate of 20% on all work performed on a Time-and-Materials basis and on all costs that exceed specifically stated ALLOWANCE estimates in the Proposal.

h. **EXCLUSIONS:**
This Agreement does not include labor or materials for the following work:
i. **PROJECT-SPECIFIC EXCLUSIONS:**

ii. **STANDARD EXCLUSIONS:** Unless specifically included in the "General Scope of Work" section above, this Agreement does not include labor or materials for the following work: Plans, engineering fees, or governmental permits and fees of any kind. Additional work required by governmental plan checkers on final "Red Lined" Job copy of plans that are yet to be issued. Testing, removal and disposal of any materials containing asbestos (or any other hazardous material as defined by the EPA). Custom milling of any wood for use in project. Moving Owner's property around the site. Labor or materials required to repair or replace any